UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

——

TORRI LAMAN BERRY,                     )
                                       )
                    Plaintiff,         )        Case No. 1:09-cv-4
                                       )
v.                                     )        Honorable Paul L. Maloney
                                       )
MARY BERGHUIS,                         )
                                       )        **REPORT AND RECOMMENDATION**
                    Respondent.        )
_____)

      This is a habeas corpus proceeding brought by a state prisoner pursuant to 28 U.S.C.

§ 2254. Petitioner is serving consecutive sentences of 20-to-40 years on convictions for armed

robbery, MICH. COMP. LAWS § 750.529, and first-degree home invasion, MICH. COMP. LAWS §

750.110a(2). In addition, petitioner was sentenced to now-expired terms of 2 years' incarceration

on his conviction for 2 counts of aiding and abetting possession of a firearm during the commission

of a felony, MICH. COMP. LAWS § 750.227b. The Ingham County Circuit Court imposed these

sentences on April 12, 2006, after petitioner was convicted in a jury trial. Petitioner appealed his

conviction to the Michigan Court of Appeals, which affirmed the conviction by *per curiam* opinion

issued February 12, 2008. The state Supreme Court denied discretionary review.

      Petitioner initiated the present habeas corpus proceeding by filing a *pro se* petition

on January 5, 2009. The petition raises three grounds for habeas corpus review:

    I.     THE PROSECUTION FAILED TO PRESENT SUFFICIENT EVIDENCE
         TO CONVICT MR. BERRY AS AN AIDER OR ABETTOR TO FELONY
         FIREARM. IN PARTICULAR, THE PROSECUTION FAILED TO

PRESENT ANY EVIDENCE THAT MR. BERRY AIDED OR ENCOURAGED THE PRINCIPAL OFFENDER IN VIOLATING THE FELONY FIREARM STATUTE. MR. BERRY IS ENTITLED TO A JUDGMENT OF ACQUITTAL.

II.    INVESTIGATING OFFICERS USED ONE VICTIM TO TRANSLATE FOR OTHER VICTIMS DURING THE IDENTIFICATION OF THE DEFENDANT. THE IDENTIFICATION IS NOT RELIABLE AND NOT CONSTITUTIONALLY SUFFICIENT. THE IDENTIFICATION PROCEDURE WAS TAINTED AND SHOULD HAVE BEEN SUPPRESSED. MR. BERRY IS ENTITLED TO A NEW TRIAL.

III.    THE PROSECUTION ENGAGED IN MISCONDUCT DURING THE TRIAL. THE CONDUCT OF THE PROSECUTION CREATED OVERWHELMING PREJUDICE TO THE DEFENDANT. THE CONVICTION SHOULD BE OVERTURNED AND THE MATTER REMANDED FOR RETRIAL.

(Petition, docket # 1, Attachment B). Respondent has filed an answer, supported by the state trial and appellate records. The answer requests dismissal of grounds I and II on the merits and ground III on the doctrine of procedural default. This matter has been referred to me for review of the record and submission of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that all three grounds for habeas corpus relief be denied on their merits.

**Proposed Findings of Fact**

**A.    Trial Court Proceedings**

This prosecution arose from a home invasion that took place on May 2, 2005, in East Lansing, Michigan. The home was owned by Chi Dong Lau and his wife Kamlan. Mr. Lau's mother and the couple's three children also lived in the home. At the time of the home invasion, Mr. Lau's niece Ling Chang was visiting.

The home invasion was perpetrated by three black men at 11:40 p.m. Ms. Chang was pulling into the driveway to visit the Lau family when she saw three men standing in the driveway. They moved aside as she pulled into the driveway and one followed her to the door, asking for directions to Albert Street. (TT III, 25-28). Both Mr. and Mrs. Lau came to the door to try to help give the man directions. (TT II, 15, 80). The man pushed the door open and the other two rushed in. (TT II, 16). One pulled a gun from his pants pocket. (*Id.*, 17, 26). The man holding the gun threatened Mr. Lau and told all the adult victims to get on the floor. (*Id.*, 17). (The children, aged 9, 8 and 5, were asleep.) (TT II, 88). The gunmen took Mr. Lau to the bedroom to open the family safe. (*Id.*, 19). Apparently, the robbers knew of the safe and its location.[1] Mr. Lau was having trouble getting the safe opened, and the man with the gun threatened to shoot him. (*Id.*, 19). Mrs. Lau said that she knew the combination and could open the safe. The other two men (one of whom was later identified as petitioner) made everyone go into the bedroom and get on the floor while Mrs. Lau opened the safe. (*Id.*, 34-35). The niece, Ling Chang, testified that petitioner twice told Mrs. Lau, "Bitch, open the lock and start counting 5, 4, 3, or I'll shoot you." (TT III, 38-39). Once Mrs. Lau got the safe opened, petitioner and another accomplice grabbed the two boxes in the safe. (TT III, 39). All told, the men took money, coins and jewelry valued at about $3,000.00. (TT II, 88).

Officers arrived at the scene. Within seven days of the robbery, they showed the family photo arrays of likely suspects. Mr. Lau, Mrs. Lau, and Ling Chang all identified petitioner as one of the robbers. They did so at three different times, as Ms. Chang lived in Battle Creek and

---

[1] The prosecution established that Kenneth Wang, who met petitioner in jail, had bragged to him that his aunt and uncle, the Laus, were rich and that petitioner had asked for details about them. (TT III, 73-81).

was interviewed by detectives there, while Mr. and Mrs. Lau identified petitioner in separate sessions in East Lansing.  (TT III, 87-90, 99, 106-110).

Lansing Detective Barbara Kraus and East Lansing Detective James Campbell interviewed petitioner at the police station on May 18, 2005, after three of the victims had identified him.  He was *Mirandized*, but officers did not tell him the interview was being videotaped.  (TT III, 15).  The videotaped interview was played for the jury at trial.  (TT III, 4-5, 93-95).  In the course of the statement, petitioner's story changed several times.  First, he denied any involvement, then he said he was present in the yard, then admitted being in the driveway.  He denied to police that he had entered the house and said he wanted no part of the robbery and had nothing to do with the gun. (TT III, 18; TT IV, 10-12).  He cooperated by giving police the street name of the gunman, "Big Will."  (TT III, 19, 102-11).[2]  Petitioner denied having anything to do with the robbery and claimed that a fourth man named "Reggie" actually entered the house.  Officers ultimately decided that Reggie did not exist.  (TT III, 108).

Petitioner was charged with armed robbery, first-degree home invasion, and two counts of aiding and abetting the possession of a firearm during commission of a felony.  Jury trial began in the Ingham County Circuit Court on February 13, 2006, and continued through February 17, 2006.  The jury found petitioner guilty.  Petitioner and counsel appeared for sentencing on April 12, 2006.  (Tr., docket # 14).  At the outset of allocution, defense counsel told the court that petitioner was remorseful for his conduct and that he apologized to the victims and their family.  (Tr., 4).  Counsel read a statement written by petitioner in which petitioner said that he was "sorry for the

---

[2] Police identified "Big Will" as Willie Lyons.  Lyons pled guilty to first-degree home invasion.

crime, which I played a part in. I want to apologize to the victims for the crime affected . . . . I was caught up and around with the wrong people." (*Id.*, 6). The record showed that petitioner was a fourth-felony offender. The court sentenced petitioner to consecutive terms of 240-to-480 months on the home invasion and robbery charges and to two concurrent terms of 24 months for the felony-firearm convictions, to run consecutively to the other charges, as is required by state law. (*Id.*, 10-11).

### B. Appellate Proceedings

Petitioner, through appointed counsel, appealed as of right to the Michigan Court of Appeals. Appellate counsel raised the same three claims for relief as are contained in the habeas corpus petition: (1) insufficient evidence to convict petitioner of possession of a firearm during commission of a felony, on an aiding-and-abetting theory; (2) error in admitting evidence of pretrial identification by witnesses Chi Lau, Kamlan Lau, and Ling Chang; and (3) prosecutorial misconduct arising from statements made during *voir dire* and final argument.

By *per curiam* opinion issued February 12, 2008, a panel of the Michigan Court of Appeals rejected all appellate claims and affirmed the conviction. *People v. Berry*, No. 270383, 2008 WL 376424 (Mich. Ct. App. Feb. 12, 2008). On the sufficiency of the evidence claim, the court determined that state law requires only that a defendant performed acts or gave encouragement that assisted in commission of the felony-firearm offense and intended the commission of the crime or had knowledge that the principal intended its commission at the time defendant gave aid and encouragement. Reviewing the evidence in the light most favorable to the prosecutor, the court noted that petitioner himself told Mrs. Lau that she would be shot by the accomplice if she did not

open the safe, indicating that petitioner specifically used his confederate's possession of a firearm to intimidate the victims. This and other testimony established each of the elements of the crime on an aiding-and-abetting theory. (Ct. of App. Opinion (Op.), 2-3, found in docket # 15). The court also rejected the challenge to the constitutionality of the pretrial identification. Counsel's only argument in support of a claim of undue suggestivity was that officers used Mrs. Lau as an interpreter in dealing with Mr. Lau. Counsel argued that because of this fact, it was not possible to know whether Mr. Lau understood the admonishment written at the top of the photographic lineups and, further, that Mr. and Mrs. Lau may have discussed the content of their identification with each other in Chinese without the knowledge of police officers. The court noted that this argument incorrectly placed the burden on the prosecutor to show that the identification was not unduly suggestive. Speculation about possible defects is insufficient to meet this burden. The court further noted that Ms. Chang is fluent in English, testified without an interpreter before the jury, and that there was no reason to doubt her understanding of the admonishment. Finally, the court pointed out that petitioner conceded his presence at the home on the night of the robbery, although he denied entering the home. "The fact that defendant disputed that he entered the house and took part in the robbery is an issue of witness credibility related to the events of the crime, not on whether defendant was at the home." (Op., 2-3).

   With regard to the claims of prosecutorial misconduct, the court noted that these claims were unpreserved for review, but then went on to analyze them on the merits. The court determined that, read in light of the trial as a whole, the isolated comments made by the prosecutor were neither improper nor prejudicial. The court further determined that any possible impropriety was alleviated by the court's instructions. (Op., 3-4).

Petitioner filed a *pro se* application for leave to appeal to the Michigan Supreme Court. By standard order entered May 27, 2008, the court denied discretionary review. This habeas corpus action followed.

## **Applicable Standard**

Because petitioner filed his habeas application long after the April 1996 enactment of the Antiterrorism and Effective Death Penalty Act, Pub. L. 104-132, 110 Stat. 1214 ("AEDPA"), the provisions of that law govern the scope of the court's review. *See Penry v. Johnson*, 532 U.S. 782, 791 (2001). AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands that state court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citations omitted); *see Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010). "AEDPA requires heightened respect for state court factual and legal determinations." *Lundgren v. Mitchell*, 440 F.3d 754, 762 (6th Cir. 2006). If a state court adjudicated the claim, deferential AEDPA standards must be applied. 28 U.S.C. § 2254(d); *see Premo v. Moore*, 131 S. Ct. 733, 739 (2011); *Waddington v. Sarausad*, 129 S. Ct. 823, 831 (2009); *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) ("'[A]ny claim that was adjudicated on the merits in State court proceedings' is subject to AEDPA deference.") (quoting 28 U.S.C. § 2254(d)).

AEDPA prevents federal habeas "retrials" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA standard is difficult to meet "because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011); *see Cullen v. Pinholster*, No. 09-1088, ___ S. Ct. ___, 2011 WL 1225705, at

\* 8 (U.S. Apr. 4, 2011). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error corrections through appeal." *Harrington*, 131 S. Ct. at 786. Section 2254(d) states that an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see Berghuis v. Thompkins*, 130 S. Ct. 2250, 2259 (2010). "Section 2254(d)(1)'s 'contrary to' and 'unreasonable application' clauses have independent meaning. A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than the [Supreme Court] on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. at 694 (citations omitted). A federal court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from Supreme Court decisions, but unreasonably applies it to the facts of the particular case, or if the state court unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams v. Taylor*, 529 U.S. 362, 407 (2000); *see Hoffner v. Bradshaw*, 622 F.3d 487, 495 (6th Cir. 2010).

**Discussion**

**I.      Sufficiency of the Evidence**

Petitioner's first habeas corpus claim is that the evidence was insufficient to convict him on two counts of possession of a firearm during conviction of a felony, on an aiding-and-abetting theory. Petitioner received a mandatory two-year sentence on these convictions, which must be served consecutively to any other sentence. *See* MICH. COMP. LAWS § 750.227b(2). By the time petitioner initiated this habeas corpus proceeding, his two-year sentence on these convictions had expired. Petitioner is nevertheless deemed to be "in custody" on these convictions within the meaning of 28 U.S.C. § 2254(a), even though they expired before he filed the petition, under the rule of *Garlotte v. Fordice*, 515 U.S. 39 (1995). This court therefore has jurisdiction to review petitioner's challenge to the constitutionality of these convictions.

A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The Michigan Court of Appeals ruled directly on this claim, which petitioner's retained counsel raised on appeal. Review of this issue must therefore be conducted under the AEDPA standard, which the Sixth Circuit describes as "very deferential." *Durr v. Mitchell*, 487 F.3d 423, 448 (6th Cir. 2007). Review of challenges to the sufficiency of the evidence under the *Jackson v. Virginia* standard proceeds under the "unreasonable application" prong of AEDPA. *See Saxton v. Sheets*, 547 F.3d 597, 602 (6th Cir. 2008); *Thompson v. Bock*, 215 F. App'x 431, 435 (6th Cir. 2007). In other words, such an argument is properly understood as an allegation that the state court's decision resulted in an unreasonable application of *Jackson v. Virginia*. *See Eady v. Morgan*, 515 F.3d 587, 596 (6th Cir. 2008). Review in such cases "is limited to determining whether the evidence was so overwhelmingly in favor of the petitioner that it compelled a verdict in his or her favor." *Thompson*, 215 F. App'x at 436. This standard presents a "very difficult hurdle" for the habeas petitioner. *Id.* at 437.

The Sixth Circuit recently summarized the "double layer of deference" given the state-court decisions in the context of sufficiency-of-the-evidence claims:

> Thus, after AEDPA, federal courts reviewing state habeas claims accord a double layer of deference:
> First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In doing so, we do not re-weigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. *See United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could *not* have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the *state*

*appellate court's* sufficiency determination as long as it is not unreasonable. *See* 28 U.S.C. § 2254(d)(2).

*White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009) (quoting *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

The Michigan statute under which petitioner was convicted makes it a crime for person to possess a firearm during commission of a felony. MICH. COMP. LAWS § 750.227b(1). The Michigan Supreme Court has held that a defendant may be convicted of aiding and abetting this crime upon proof that (1) a violation of the felony-firearm statute was committed by the defendant or some other person, (2) that the defendant performed acts or gave encouragement that assisted in the commission of the felony-firearm violation, and (3) "that the defendant intended the commission of the felony-firearm violation or had knowledge that the principal intended its commission at the time that the defendant gave aid and encouragement." *People v. Moore*, 679 N.W.2d 41, 50-51 (Mich. 2004). "In determining whether a defendant assisted in the commission of the crime, the amount of advice, aid, or encouragement is not material if it had the effect of inducing the commission of the crime." *Id.* The prosecutor must present evidence proving that the defendant intentionally aided or abetted felony-firearm possession by "specific words or deeds." *Id.*, n. 18. In *Moore*, the court found that the evidence was sufficient to convict defendant Harris under this standard, as Harris entered the store and "cased" its interior, left the store accompanied by the co-defendant, who was carrying a gun, and specifically used the co-defendant's possession of that firearm to intimidate and rob a store customer. *Id.* at 52.[3]

---

[3] In the state Court of Appeals, petitioner relied on a standard enunciated in earlier cases, such as *People v. Johnson*, 303 N.W.2d 442 (Mich. 1981), under which the prosecutor was required to prove that the aider-and-abettor assisted the principal in obtaining or retaining the firearm itself. These cases were expressly overruled by *Moore*, 679 N.W.2d at 50.

In reviewing the sufficiency of the evidence to support the aiding-and-abetting theory, the Michigan Court of Appeals in the present case applied the appropriate constitutional standard -- whether the evidence, viewed in the light most favorable to the prosecution, would justify a rational trier of fact in finding that all the elements of the crime were proven beyond a reasonable doubt. (Op., 1). The Court of Appeals gleaned the elements of the aiding-and-abetting theory from the Supreme Court's decision in *Moore* and found that those elements were satisfied by the evidence. First, the jury could have concluded that the gunman, Willie Lyons, committed the felony-firearm offense, because eyewitnesses testified that the gunman threatened the victims with a firearm and ordered two of them to open a home safe at gunpoint. Significantly, petitioner himself told Mrs. Lau that she would be shot if she did not open the safe, thereby performing acts that gave encouragement and assistance to Lyons in violating the felony-firearm statute. (Op., 2). The Court of Appeals relied on *Moore* in finding that the use of a confederate's possession of a firearm to intimidate and rob victims is sufficient for conviction on an aiding-and-abetting theory, even though the defendant does not physically possess the firearm. (*Id.*). Finally, the court noted that even before petitioner threatened Mrs. Lau, Lyons had threatened all the victims with a firearm in petitioner's presence.

Under any standard of review, the decision of the state Court of Appeals passes muster. The court applied the correct constitutional standard, correctly identified the elements of the offense as enunciated by the state Supreme Court, and reasonably applied that law to the facts of the case. The findings of the state Court of Appeals were supported by the testimony of eyewitnesses, especially Ling Chang, who clearly identified petitioner as the person who threatened to have her aunt shot if the safe were not opened. (TT III, 38-39). The decision of the state Court

of Appeals was a reasonable application of the *Jackson v. Virginia* standard. Petitioner's first claim for relief is therefore without merit.

## II.     Pretrial Identification

Petitioner's second claim for habeas corpus relief is an ill-defined challenge to the validity of the procedures leading to his pretrial identification by three of the victims -- Mr. and Mrs. Lau and Ling Chang -- in three separate photographic lineups. Petitioner does not claim in this court (and he did not claim in the state courts) that there was anything suggestive about the photo array itself. Rather, his principal complaint is that the use of a translator by police to communicate with Mr. Lau during the identification process leaves uncertainty concerning his understanding of the procedure and the accuracy of his identification. This claim borders on the frivolous.

In *Stovall v. Denno*, 388 U.S. 293, 302 (1967), the Supreme Court recognized a due-process right to exclude identification testimony that results from unnecessarily suggestive procedures that may lead to an irreparably mistaken identification. In *Neil v. Biggers*, 409 U.S. 188 (1972), the Court further explained that it is "the likelihood of misidentification which violates a defendant's right to due process," and so the ultimate focus of the inquiry is on the reliability of the identification testimony. 409 U.S. at 198. Thus, an identification derived from unnecessarily suggestive procedures need not be excluded if the totality of the circumstances indicates that the identification is reliable. *See Manson v. Brathwaite*, 432 U.S. 98, 114-16 (1977). The federal courts employ a two-step analysis to determine the admissibility of identification testimony. First, the defendant must prove that the identification procedure was "impermissibly suggestive." *Biggers*, 409 U.S. at 198-99. Only if a petitioner meets this burden does the court go on to the second inquiry

-- whether the testimony was nevertheless reliable under the totality of the circumstances. *Id.* at 199. The factors relevant to a determination of reliability include (1) the witness's opportunity to view the perpetrator at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's description prior to the identification, (4) the witness's level of certainty when identifying the defendant at the confrontation, and (5) the length of time between the crime and the confrontation. *Id.* at 199-200; *see also Manson*, 432 U.S. at 114-16.

On direct review, the Michigan Court of Appeals set forth the constitutional test, as enunciated by the state Supreme Court in *People v. Kurylczyk*, 505 N.W.2d 528 (Mich. 1993), which itself relied on *Biggers* and other Supreme Court authority. 505 N.W.2d at 534. The state Court of Appeals determined that petitioner failed to establish that the photographic lineups were unduly suggestive. (Op., 2-3). The court rejected petitioner's only articulated challenge to the photo array procedure, which was based on the alleged lack of certainty concerning the witnesses' understanding of the procedure. The court pointed out that this argument could only apply to Mr. Lau, as he was the only one who used an interpreter (Mrs. Lau) at the photo array. Both Mrs. Lau and Ms. Chang spoke English well enough to be interviewed in English. The court held that this argument incorrectly placed the burden on the prosecutor to show that the witness was given the proper admonishment and that the interpreter did not improperly share information. Rather, it is the defendant who must show that the pretrial identification procedure is unduly suggestive. (*Id.*).

Because the state Court of Appeals directly reviewed this due-process issue and articulated the appropriate legal standard, its decision is entitled to deference and can only be overturned if the state courts' application of clearly established federal law is "objectively unreasonable." *Mills v. Cason*, 572 F.3d 246, 250 (6th Cir. 2009). The decision of the Michigan

Court of Appeals easily withstands review under the AEDPA standard. The Court of Appeals rejected petitioner's due-process claim at the first step of analysis -- the lack of evidence of impermissibly suggestive procedure. "Convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). To be deemed unduly suggestive, the procedure itself must have "steered the witness to one suspect or another, independent of the witness's honest recollection." *Cornwell v. Bradshaw*, 559 F.3d 398, 413 (6th Cir. 2009), *cert. denied*, 130 S. Ct. 1141 (2010); *Wilson v. Mitchell*, 250 F.3d 388, 397 (6th Cir. 2001). As the Michigan Court of Appeals correctly held, petitioner bears the burden of proving this element. *Cornwell*, 559 F.3d at 413.

The state Court of Appeals' conclusion that petitioner failed in his burden to show unduly suggestive procedures was clearly reasonable. As noted, petitioner did not raise any challenge to the three photo arrays themselves. The prosecution presented extensive testimony concerning the circumstances for each of the three pretrial identifications. Detective Barbara Kraus presented six photos of potential suspects to Mr. Lau and Mrs. Lau on separate occasions. Mrs. Lau was the first to be shown a photo array, four days after the crime. (TT II, 108-09). Detective Kraus did not have any trouble with Mrs. Lau's English, so she conducted the photo array without an interpreter, reading the "admonition"[4] at the top of the photo array to her. (TT III, 106-07). Mrs. Lau chose petitioner, but the detective gave her no feedback about the person that Mrs. Lau chose. (*Id.*,

---

[4] The admonition merely advised the witness that the perpetrator may not be pictured in the array.

109).  Mr. Lau came to the East Lansing Police Department three days later.  (*Id.*).  Detective Kraus read the "admonition" verbatim, and Mrs. Lau translated for her husband.  (TT III, 87, 106).  Kraus then told Mrs. Lau to leave the room before she showed the array to Mr. Lau, so he would not be influenced by his wife.  (*Id.*, 88).  Mr. Lau also chose petitioner.  On the same day (May 9), Detective Kraus drove to Battle Creek to interview Ling Chang and to show her a photo array.  Kraus conducted the interview without an interpreter.  Mrs. Chang also picked out petitioner.  (*Id.*, 90, 99, 106, 109).  Kraus testified that she did not tell any of the three witnesses about the choices of the others.  (*Id.*, 109-10).

The only objection raised by defense counsel in the trial court was to the introduction of Mr. and Mrs. Lau's photo arrays, marked as Peoples Exhibits 8 and 10.  (TT III, 89-90).  The basis for the objection was "the fact that we don't know if the admonitions were correctly read."  (*Id.*).  The court overruled the objection, finding that the objection went to weight and not admissibility.  (*Id.*).

To state a claim for habeas corpus relief, a petitioner must ground his claim on the clearly established holdings of the United States Supreme Court on matters of federal constitutional law.  28 U.S.C. § 2254(d)(1); *see Premo v. Moore*, 131 S. Ct. at 743; *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  Under this standard, petitioner would be able to challenge these pretrial identifications by asserting that his photo was somehow prominent, or that the other photos depicted people who did not resemble the suspects, or that officers in some other way "steered" the three witnesses towards petitioner's picture. *Simmons*, 390 U.S. at 383; *see, e.g., United States v. Crozier*, 259 F.3d 503, 510-11 (6th Cir. 2002) (use of color photo of defendant with a group of black-and-white photos unduly suggestive);  *see also United States v. DeCologero*, 530 F.3d 36, 62 (1st Cir.

2008) (photo array impermissibly suggestive because four of six photos did not resemble defendant); *Thomas v. Varner*, 428 F.3d 491, 503 (3d Cir. 2005) (photo array impermissibly suggestive where witness failed to identify defendant on several occasions before being told by detective to look closely at defendant's picture). Petitioner raises no such claim, however. Rather, he speculates that Mr. Lau may not have understood the "admonition" read by Detective Kraus to him through Mrs. Lau, acting as interpreter. The Supreme Court has never held, or even suggested, that a proper photographic lineup requires the reading of any sort of "admonition." Consequently, had the detective omitted this step altogether, petitioner would have no resulting due-process claim. His challenge on the basis that "we don't know if the admonitions were correctly read" (TT III, 89) fails to state any constitutional claim. Likewise, the speculation of appellate counsel that "the witnesses spoke Chinese among themselves and may have discussed the issue of identification in general," falls far short of sustaining petitioner's burden to establish impermissibly suggestive police conduct. (Def.-Appellant's Brief on Appeal at 10, found in Court of Appeals record, docket # 15). Because petitioner failed to establish unduly suggestive procedures, the state Court of Appeals was correct in ending the analysis at that point and not applying the *Biggers* factors to determine reliability. *See United States v. Harris*, 281 F.3d 667, 670 (7th Cir. 2002) ("Here, we need not reach the second step, because there was nothing unduly suggestive about Wallace's line-up identification."). The court did observe, however, that the effect of the identification was significantly mitigated by petitioner's admission on the videotaped interview that he was indeed present at the scene of the crime, so that any "possible problem" did not require reversal. (Op., 3).

In summary, petitioner's second ground for relief is completely insubstantial. Petitioner does not seek relief for any suggestiveness in the photo array, but on the speculation that

one of the three witnesses who identified him may not have understood an "admonishment" or that the witnesses may have discussed their identification with each other in Chinese. The Supreme Court has never held, or even intimated, that a due-process violation can arise from such speculative circumstances. The state Court of Appeals applied the appropriate legal standard, and its decision was manifestly correct. Petitioner cannot show that the state court decision represented an unreasonable application of clearly established federal law.

### III.    Prosecutorial Misconduct

Petitioner's third claim for relief arises from certain alleged misconduct by the assistant prosecutor during the *voir dire* process. The alleged impropriety does not involve statements, but questions by the assistant prosecutor to prospective jurors with regard to deliberations and the process of resolving hypothetical differences among jurors. (TT I, 35-36). The petition also charges the prosecutor with "vouching," by asking a juror whether the juror thought it is appropriate to give police officers "some benefit for knowing their jobs the same as you give that bridge builder." (*Id.*, 32).

Neither of the allegedly improper comments was the subject of an objection at trial. On direct review, the state Court of Appeals noted that the charge of prosecutorial misconduct was "unpreserved," but then went on to address the issue on the merits, without purporting to enforce any procedural default. (Op., 3-4). Respondent nevertheless invokes the doctrine of procedural default, under which a state court's reliance on an adequate and independent state procedural ground to deny relief will bar habeas corpus relief, unless a petitioner can show cause and prejudice or a fundamental miscarriage of justice. *See Murray v. Carrier*, 477 U.S. 478, 485 (1986). Respondent's

reliance on the doctrine of procedural default is mistaken. The state may assert a procedural default only when the last reasoned opinion of the state courts "explicitly imposes" a procedural default. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). A habeas court must presume that a state court decided a federal issue on its merits unless the state court "clearly and expressly" states that its decision is based on "bona fide, separate, and 'independent state grounds.'" *Coleman v. Thompson*, 501 U.S. 722, 733 (1991) (quoting *Michigan v. Long*, 463 U.S. 1032, 1041 (1983)); *see Harris v. Reed*, 489 U.S. 255, 264 (1989) ("plain statement" rule applies to both direct review and habeas). In the present case, the Michigan Court of Appeals merely noted that the claim was unpreserved, but did not purport to invoke any procedural bar or to impose a higher standard of review -- such as plain error -- applicable to the review of defaulted claims. *See People v. Carines*, 597 N.W.2d 130, 138-39 (Mich. 1999) (unpreserved claims of constitutional error subject only to review for plain error). Rather, after noting that the issue was unpreserved, the court then addressed it on the merits. This is similar to the ambiguous reference found by the *Harris* Court to be inadequate to meet the "plain statement" rule. 489 U.S. at 266. Where, as here, the last reasoned opinion of the state courts does not "clearly and expressly rely on an independent and adequate state ground, a federal court may address the petition." *Coleman*, 501 U.S. at 735. Respondent's invocation of the doctrine of procedural default is therefore without merit.

Under relevant Supreme Court authority, prosecutorial misconduct requires the grant of habeas corpus relief only if it "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). The appropriate standard of review for such a claim in a habeas corpus proceeding "is the narrow one of due process, and not the broad exercise

of supervisory power." *Darden*, 477 U.S. at 181; *accord Goff v. Bagley*, 601 F.3d 445, 480 (6th Cir. 2010). Thus, the touchstone of due-process analysis in cases of alleged prosecutorial misconduct "is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). The Sixth Circuit has adopted a two-step approach for determining whether prosecutorial misconduct violates a defendant's due-process rights under this standard. *United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001); *see Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000) (utilizing this test to evaluate a due-process claim based upon prosecutorial misconduct raised in a post-AEDPA habeas petition). First, the court must consider whether the prosecutor's conduct and remarks were improper. *Id.* If the remarks were improper, then the court must apply the four-factor test set forth in *United States v. Carroll*, 26 F.3d 1380, 1385 (6th Cir. 1994), to determine "whether the impropriety was flagrant" and thus violated the defendant's due-process rights. *Carter*, 236 F.3d at 783. The four factors are (1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong. *Id.*

The Michigan Court of Appeals reviewed petitioner's claims of prosecutorial misconduct on their merits. The court found that the challenged statements were not improper and, furthermore, that any impropriety either was cured by the court's final instructions or could have been cured by an instruction, if one had been requested. (Op., 3-4). This decision is entitled to deference under AEDPA and imposed upon petitioner a high burden for obtaining habeas corpus relief. "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in the federal court was so lacking in

justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). Petitioner cannot possibly meet this standard with regard to the isolated remarks of the prosecutor made during the *voir dire* process.

Petitioner's claims of prosecutorial misconduct arise from questions, not statements, of the assistant prosecutor during the *voir dire* process. The first alleged impropriety arose from this series of questions and answers:

MR. BOSTIC: If you think you have a doubt, would you agree to try and put your doubt into words to your fellow jurors?

JUROR LUCIW: You're trying to change me, have me change my mind?

MR. BOSTIC: I'm not talking about changing your mind right now. I'm just saying if you think you have a doubt, would you try to put that doubt into words instead of just saying, well, it just doesn't feel right?

JUROR LUCIW: I think I could.

MR. BOSTIC: All right. If you cannot put it into words, would you take a second hard look at your doubt and say, well, maybe I'm not being reasonable?

JUROR LUCIW: I don't know.

MR. BOSTIC: Okay. Mr. Pulford, I'm not going to hold you to this. But, do you agree with my basic concept that if you can't put any words to it, then maybe it's not a reasonable doubt, Mr. Pulford?

JUROR PULFORD: If I can't put a word to it, yes.

MR. BOSTIC: Okay. I'm not saying don't follow your instincts. But, I'm just asking that you try to put it in words, if you can't, that you give it some serious thought whether you're being reasonable?

JUROR PULFORD: Yes.

MR. BOSTIC: Okay, thank you.

(TT I, 35-36). The only criticism in petitioner's appellate brief concerning this short exchange, was that the prosecutor was not attempting to facilitate the intelligent use of peremptory challenges, "but to tell the jury how it should conduct its deliberations." (Def.-Appellant's Brief on Appeal, at 15, found in Court of Appeals record, docket # 15). Petitioner's counsel did not cite any Supreme Court authority condemning questions of this nature or even suggesting their impropriety. The assistant prosecutor was merely exploring the concept of reasonable doubt with prospective jurors. Earlier in the *voir dire* process, the prosecutor was careful to acknowledge that the burden of proof was on the state to prove the case beyond a reasonable doubt, that the burden is imposed by the Constitution itself, and that the judge would give the jury the legal definition of reasonable doubt, and "that's the definition you must follow." (*Id.*, 22-23). He also underscored that the defendant was entitled to the presumption of innocence. (*Id.*, 24). The challenged questions to two jurors merely represented an effort to determine how the jurors might evaluate and articulate a reasonable doubt.

This brief, unobjected-to line of inquiry was not improper. If there were any impropriety, it cannot be deemed flagrant. The questions were isolated. They were not prejudicial to the defendant -- in fact, the inference that petitioner complains about could work against the prosecutor as easily as the defendant. The questions presumably were asked deliberately, but any confusion they may have caused would clearly have been dispelled by the court's instructions. The court's final instructions (TT IV, 34-48) thoroughly explained reasonable doubt and the deliberation process, and would have dispelled any harmful inference, in the unlikely event that one were drawn. *See Goff*, 601 F.3d at 480-81 (curative instructions are presumed effective in the absence of "overwhelming probability" that they were ignored).

The second challenged line of questioning was as follows:

MR. BOSTIC:  Did you drive to the courthouse today?

JUROR CHELF:  Yes.

MR. BOSTIC:  Did you cross any bridges on the way here?

JUROR CHELF:  Yes.

MR. BOSTIC: I realize that that bridge was designed by a person, who either works for the State or was contracted by the State to design it?

JUROR CHELF:  Correct.

MR. BOSTIC:  Or government employee designed that bridge?

JUROR CHELF:  Yes.

MR. BOSTIC:  You drove over that bridge not thinking about really whether it would hold you up or not, did you?

JUROR CHELF:  No.

MR. BOSTIC:  So, you just sort of took it for granted that whoever designed that bridge in terms of the thickness of the metal, the is [sic] span, amount of concrete that, they knew what they were doing?

JUROR CHELF:  Correct.

MR. BOSTIC:  Now, you're going to hear testimony from police officers about certain investigative step that they took.  There may be some things pointed out by the Defense of things that they didn't do, either didn't think to do it or chose not to do it.  So, do you think it's appropriate to give our police officers some benefit for knowing their jobs the same as you gave that bridge builder?

JUROR CHELF:  Yes.

MR. BOSTIC:  Anyone else have a problem with that?

Thank you.

(TT I, 31-32).

Petitioner challenges these questions as improper "vouching" by the prosecutor. The threshold question in habeas corpus analysis is whether the due-process right relied upon by petitioner has been clearly established by decisions of the United States Supreme Court. 28 U.S.C. § 2254(d)(1). In the context of this case, the issue is whether the proposition that the prosecutor violates the Due Process Clause by vouching for witness credibility has been clearly established by holdings of the Supreme Court. I find that it has not. Although the Court has recognized that certain prosecutorial misconduct, if severe and pervasive, can violate the Due Process Clause, *see, e.g., Donnelly*, 416 U.S. at 643; *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (presentation of knowingly false testimony), the Court has never condemned under due-process principles prosecutorial "vouching." The Court's only occasion to opine in this area arose in a federal prosecution in which the prosecutor shared with the jury his "personal impression" that the defendant intended to commit fraud. *United States v. Young*, 470 U.S. 1 (1985). Examining the totality of the proceedings, the Court refused to find that the prosecutor's remark constituted plain error. In reaching this conclusion, the Court said that a prosecutor violates rules of professional conduct by expressing his personal belief as to the truth or falsity of any testimony or evidence of the guilt of the defendant. 470 U.S. at 7. The Court nevertheless refused to find plain error. Two observations must be made concerning the sufficiency of the *Young* decision to satisfy AEDPA's requirement that a constitutional right be clearly established by holdings of the Supreme Court. First, the *Young* Court was not engaged in constitutional adjudication, but was merely reviewing a federal trial for the presence of plain error. The Court did not cite the Due Process Clause or any of its cases decided thereunder. Although the Court said that vouching can be unprofessional, it has never said that vouching is unconstitutional. Second, the Court's comments concerning this particular species of

-24-

prosecutorial misconduct were clearly *dictum*, as the Court went on to hold that the prosecutor's error, whatever it may have been, did not affect the fundamental fairness of the trial. 470 U.S. at 20. Consequently, petitioner cannot point to any Supreme Court holding that condemns under federal constitutional principles comments by the prosecutor that may be construed as expressing a personal opinion concerning witness credibility.

The lower federal courts have generally recognized two types of objectionable vouching. *See Johnson v. Bell*, 525 F.3d 466, 482 (6th Cir. 2008); *Brown v. McKee*, 231 F. App'x 469, 478 (6th Cir. 2007) (citing *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999)). The first type impermissibly places the government's prestige behind the witness to enhance the witness's credibility. *Francis*, 170 F.3d at 550; *United States v. Carroll*, 26 F.3d 1380, 1388-89 (6th Cir. 1994); *Drew v. Collins*, 964 F.2d 411, 419 (5th Cir. 1992). In the second type of impermissible vouching, also known as bolstering, the prosecutor invites the jury to believe that there is other evidence, known to the prosecutor but not introduced into evidence, justifying the prosecutor's belief in the defendant's guilt. *See Francis*, 170 F.3d at 551; *United States v. Medlin*, 353 F.2d 789, 796 (6th Cir. 1965); *Henderson v. United States*, 218 F.2d 14, 19 (6th Cir. 1955). Even applying these lower court holdings (which would offend AEDPA), I find no impermissible vouching occurred in this case.

The prosecutor's *voir dire* questions did not impermissibly place the government's prestige behind any particular witness, or the police officer-witnesses in general. The assistant prosecutor merely asked whether the juror would give officers the same benefit of the doubt for knowing their jobs that they would give a bridge builder. As pointed out by the Court of Appeals, this line of questioning at best "hinted" that the police officers' testimony warrants some deference.

(Op., 4).  Certainly, it did not put the prestige of the government behind the police officer-witnesses.  At most, it suggested that a police officer should be treated in his area of expertise the same way any other witness, such as a bridge builder, would be treated.  This falls far short of a due-process violation.  Likewise, there was no "bolstering," as the prosecutor did not lead the jury to believe that some secret evidence justified the prosecutor's belief in the defendant's guilt.  The state Court of Appeals correctly pointed out that any inference arising from this line of questioning concerning the deference to be given to police officer testimony was cured by the court's final instruction that the testimony of police officers is to be judged by the same standard used in evaluating the testimony of any other witness.  (Op., 4).  In determining whether an allegedly improper comment violated the right to due process, the court must consider whether the conduct was objected to by counsel and whether a curative instruction was given by the court.  *Darden*, 477 U.S. at 180-83.  Both of these factors weigh against a finding of a due-process violation.

The questions that petitioner now claims were improper were isolated and not improper.  To the extent that they suggested an improper inference, such an inference was cured by the court's instructions.  The challenged questions could not possibly have affected the fairness of petitioner's trial.  Petitioner has not met his burden of showing that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Harrington*, 131 S. Ct. at 786-87.  His third claim for habeas corpus relief should therefore be rejected.

## Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied on its merits.


Dated:   April 12, 2011                          /s/  Joseph G. Scoville
                                                         United States Magistrate Judge


## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).   General objections do not suffice.  *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).